## THE MINNIE and another.

(*District Court, D. Connecticut.*   May 20, 1884.)

1. LIBEL—NEGLIGENCE.

>    Where a tug, engaged in towing, carries a barge too near a shoal, and does not protect her from the foreseen danger from a passing vessel, although she has an opportunity to do so, she is liable, in an action for libel *in rem*, for damages occurring through her negligence.

2. STEAM-VESSEL—DUTY IN NARROW CHANNEL—LIABILITY FOR FAILURE OF DUTY.

>    Where a steam-vessel is about to pass through a narrow passage in which is a tug and its tow, it is her duty to go slowly and carefully, in order to avoid the danger resulting from rapidly passing very near another vessel; and when damage occurs through failure to do her duty in this respect, she is liable for it.

In Admiralty.

*Wilhelmus Mynderse* and *Joseph F. Mosher,* for libelants.

*Samuel Park,* for the Minnie.

*Thomas M. Waller* and *Wm. P. Dixon,* for the Doris.

SHIPMAN, J.   This is a libel *in rem* by the owners of the barge H. S. Van Santvoord against the tug Minnie and steamer Doris, to recover the amount of the damages to the barge, her furniture, contents, and cargo, which were caused by the alleged negligence of the two other vessels.   On March 9, 1883, the barge H. S. Van Santvoord, owned by the libelants, and laden with 605 tons of coal, was taken in tow at Communipaw, New Jersey, by the steam-tug Minnie, to be towed through the harbor of New York and Long Island sound to New London.   The barge was made fast along-side the port side of the barge Wyoming, which was made fast along the port side of the tug. Two other barges were made fast along the starboard side of the tug in a similar manner.   This is the usual and proper way of conveying a tow through Hell Gate.   The four barges carried 1,800 tons of coal. The tug can easily tow 3,000 tons.   With the barges so made fast the tug proceeded safely across the harbor of New York and up the East river until she had reached a point in Hell Gate between the Middle Ground and the Sunken Meadows.   The Van Santvoord was close to the Sunken Meadows, the tide was flood, and the tug and tow were going at the rate of six miles per hour.   At this time the freight steam-propeller Doris was about 500 feet behind the tug and tow, and was also bound up the East river on a course corresponding closely with that of the Minnie, and at a speed of 12 miles per hour.   The Doris has a registered tonnage of 1,096 tons, and draws 12 to 14 feet of water when loaded.   She gave a signal of one blast of her steam-whistle to signify to those in charge of the Minnie that she was intending to pass the Minnie on her starboard side.   This signal was heard and understood by the officers of the Minnie, but was not replied to, and her course was not altered.   Her captain testified: "I did not answer the Doris' signal, because I had no idea that the man

was going to cramp me in there." The result showed that the Minnie had permitted the Van Santvoord to be too near the rocks upon the Sunken Meadows, for the Doris, coming up without slackening her speed, and being not over 25 feet from the outside barge on the starboard side of the tug, and too near the tug and tow, created so much motion as to swing the head of the tug and tow a few feet nearer the shoals. ·The Van Santvoord struck upon the shoal, slid off into deep water, and forthwith sunk with her cargo and all her furniture, except a writing-desk and the yawl-boat. Before she struck, and after the Doris had reached and had begun to pass the tow, the captain of the tug, fearing that the result would be to drive his tow upon the shoals, ordered all the helms to be ported, which was done, but it was too late to counteract the effect of both the tide and the Doris.

The Minnie and the Doris are each responsible for the accident. The Minnie carried the barge too near the shoal, and did not protest against what she knew to be a dangerous undertaking on the part of the Doris, but trusted that she either would not come too near, or would stop. The Minnie had the tow in complete control, and helped to cause the accident by her positive action in being too near the rocks in the existing state of the tide, and thus forcing the barge into a place of danger, and by her inaction in not refusing to permit the Doris to pass when the captain knew that "there was hardly room to pass."

The Doris was in fault in attempting to go through too narrow a passage at a full rate of speed. It was her duty, if she did not want to go through the south and more infrequently used channel, to slow up and permit the tug and tow to get out of the way, or to go slowly and carefully, and avoid the danger resulting from rapidly passing very near another vessel. *The C. H. Northam*, 13 Blatchf. C. C. 31. The effect of the presence of the Doris, probably, was to move the heavy tug and tow but a very few feet, but that was enough to crowd the barge upon the rocks.

Let there be a decree against the Minnie and Doris, and their respective stipulators, each for one-half of the entire damage and costs; any balance of such half which the libelants shall not be able to enforce against either vessel to be paid by the other vessel, or her stipulators, so far as the stipulated value extends; and a reference to a commissioner to ascertain the damages.